# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOSE ALVAREZ, *et al.* | ) | |
| | ) | |
| Plaintiffs, on behalf of | ) | |
| themselves and all similarly | ) | |
| situated individuals | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-602 (KBJ) |
| | ) | |
| KEYSTONE PLUS CONSTRUCTION | ) | |
| CORPORATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs Jose Alvarez and Juan Jose Alvarez ("Plaintiffs") have sued

Defendants Keystone Plus Construction Corporation ("Keystone") and its owner Carlos

Perdomo (together, "Defendants"), on behalf of themselves and similarly situated

individuals, claiming that the company's policies with respect to compensation for

overtime work performed in connection with a specific construction project violated the

Fair Labor Standards Act, 29 U.S.C. § 201–19; the District of Columbia Minimum

Wage Revision Act, D.C. Code § 31-1001–15; and the District of Columbia Wage

Payment and Collection Law, D.C. Code § 32-1301–310. This matter is now before the

Court on the parties' Joint Motion for Final Approval of the Settlement of this putative

class action. (Joint Motion for Final Approval of Settlement ("Final Approval Mot."),

ECF No. 16.) Upon consideration of the parties' submissions, the arguments and

representations made at the preliminary and final fairness hearings, the relevant

statutes, case law, and the entire record, the Court will **GRANT** the parties' motion for final approval. A separate Order consistent with this Memorandum Opinion will issue.

I. <u>BACKGROUND</u>

**A. Alleged Facts and Procedural History**

This case stems from a complaint Plaintiffs filed that alleges that the named plaintiffs and others similarly situated were denied overtime pay while performing construction work on Defendants' "LK Downing" construction project, from approximately June of 2012 to September of 2012. (Complaint ("Compl."), ECF No. 1, ¶ 13.) Plaintiffs allege that, rather than paying its workers time-and-a-half when they worked over 40 hours, Keystone would send them pay stubs indicating that they had worked 40 hours only, and that they were being credited with additional payments for "tools," which had a per unit cost equal to the Plaintiffs regular per hour rate. (*Id.* ¶¶ 16-21.) For example, if a Keystone employee whose regular wage was $25/hour worked 10 overtime hours in a week, his paystub for that week would include a line item for ten units of "tools" at a per unit cost of $25 each, although none of the employees had purchased any tools on behalf of Defendants. (*Id.* ¶¶ 21-22.) Plaintiffs allege that, in this way, Defendants substituted these "tools" payments for Plaintiffs' hourly wages on their overtime hours, and thereby avoided paying them time-and-a-half for those hours as required by federal and D.C. law. (*Id.* ¶¶ 20-23.) According to the complaint, this scheme had the effect of denying the workers overtime pay in violation of state and federal law. (*Id.* ¶ 1.)

Plaintiffs filed their complaint on April 30, 2013. On July 17, 2013, after the Court had granted one motion for an extension of time to respond to the complaint, the

parties filed a notice of settlement and requested additional time in order to finalize the details of the settlement. (Joint Notice of Settlement, ECF No. 7.) The parties subsequently filed two status reports, on August 29, 2013, and September 18, 2013, notifying the Court that settlement negotiations were ongoing, and that they expected to finalize a settlement agreement and submit it for the Court's approval by the first week of October. (*See* Joint Status Reports, ECF Nos. 8, 10.) On September 27, 2013, the parties filed a joint motion for preliminary approval of the settlement, as well as for class certification, appointment of class counsel, and approval of the manner of notice to the class. (Joint Mot. for Prelim. Approval of Settlement ("First Approval Mot."), ECF No. 11.) The parties attached the proposed settlement agreement to this motion. (*See* First Settlement Agreement, Ex. A to First Approval Mot., ECF No. 11-1.) The Court then held a motion hearing on the motion for preliminary approval on December 6, 2013. At the hearing, the Court noted certain concerns that it had with the settlement agreement as it had been submitted, including and in particular, concerns regarding the agreement's language relating to the scope of the release.

On December 17, 2013, the parties submitted a second Motion for Preliminary Approval of Settlement (ECF No. 13), which attached a revised version of the settlement agreement that addressed the Court's concerns. (*See* Revised Settlement Agreement ("Settlement Agreement"), Ex. A to Second Approval Mot., ECF No. 13-1.) The Court granted this motion on December 23, 2013, allowing notice to be provided to a class defined as: "[A]ll non-exempt employees who worked more than forty hours in a workweek on the Defendants' 'LK Downing' Project between June 1, 2012[,] and October 30, 2012." (Order Certifying Settlement Class and Preliminarily Approving Settlement ("Preliminary Approval Order"), ECF No. 14.)

**B. Terms Of The Settlement And Notice To The Class**

Based on informal discovery conducted during their settlement negotiations, the parties created a comprehensive list of 47 individuals who, based on the company's employment and payroll records, had been identified as members of the class. (Settlement Agreement at 14-15.) The Settlement Agreement provides for a monetary payment to each of these class members consisting of 1.37 times the amount owed for overtime during the relevant period, for a total of $51,018.45 in payments to the 47 class members. (*Id.* at 5, 15.)[1] The individual payments that are to be made to each class member under the settlement agreement are structured for tax purposes as half wages owed and half liquidated damages. (*Id.* at 8.) In addition, the Settlement Agreement provides that the two named plaintiffs shall each receive a $500 incentive payment, and Class Counsel shall receive $14,000 in costs and attorney's fees. (*Id.* at 6.)

In its December 23, 2013, order preliminarily approving the Settlement Agreement, the Court preliminarily approved the payment amount and structure set forth in the parties' Settlement Agreement, and provisionally certified the class for the purpose of providing notice to the putative class members. The Court also approved the parties' proposed form and manner of notice to the class. (Prelim. Approval Order ¶¶ 6-13.) The notice provisions of the Order stipulated that Defendants must send a

---

[1] The 1.37 multiplier does *not* mean that class members will receive less than the time-and-a-half pay they are entitled to for overtime hours. As explained above, class members have already received their base salary for the overtime hours in the form of the "tools" payments. Thus, each class member will receive 1.37 times the amount actually owed; that is, the additional half of their hourly wages that Defendants failed to pay them. For example, a class member who worked 50 hours in a week at $10/hr base salary should have been paid $550 ($10/hr x 40 regular hours, plus $15/hr x 10 overtime hours), but received only $500. Under the terms of the settlement, that individual, who is owed $50, will receive $68.50 ($50 x 1.37). In this way, each class member will actually receive more than would have been received if Defendants had simply paid time-and-a-half.

4

"Notice of Class Action Lawsuit and Proposed Settlement" to the last known address of each putative class member by first-class mail within ten days of the preliminary approval of the settlement. (*Id.* ¶ 6.) This notice form itself provided a clear and concise explanation of the basis of the lawsuit and of the putative class members' rights with respect to the suit, including the right to opt out of the lawsuit altogether and the right to object to the specifics of the settlement, as well as the procedure for lodging such objection. The notice form sent to each class member also included a statement of the amount of money each member was entitled to under the terms of the settlement. (*See* Notice Form, Ex. B to Settlement Agreement, ECF No. 13-2.)[2] Additionally, the notice form clearly explained the scope of the rights that the putative class members were releasing if they chose to remain in the class (*i.e.,* if they did not opt out) and accepted the payments they were due under the terms of the settlement. (*Id.* at 6-8.)

In its order, the Court also endorsed the detailed procedure set forth in that agreement regarding the process to be followed if any of the putative class members could not be located for notice and/or payment purposes. Specifically, 50 days after the settlement checks are to be mailed, Defendants are required to provide Class Counsel with a list of any checks that have been returned or that have not been cashed. (Settlement Agreement at 10.) Defendants must repeat this procedure after 100 days. (*Id.*) If any checks remain uncashed at that point, Class Counsel will have the opportunity to file a motion with the Court requesting that the remaining funds be paid to an appropriate *cy pres* recipient. (*Id.* at 9-10.)

---

[2] The notice form, like the Settlement Agreement, included a chart listing each class member by names, the number of hours each of those individuals worked on the LK Downing project, and the total amount of money each individual would receive under the settlement. (*See* Notice Form at 4-5; Settlement Agreement at 14-15.)

Finally, the Preliminary Approval Order also directed Class Counsel to file a sworn statement within fifty days of the issuance of that order listing all individuals who had opted out of the class or objected to the settlement. (Preliminary Approval Order ¶ 10.) On February 10, 2014, Class Counsel submitted an affidavit in accordance with this directive, attesting that no class member had chosen to opt out and that no class member had lodged any objection to the settlement. (Zelikovitz Aff., ECF No. 15.)

### C. Joint Motion For Final Approval and Fairness Hearing

On February 21, 2014, the parties filed a joint motion for final approval of the settlement. (Final Approval Mot., ECF No. 16.) As required by Federal Rule of Civil Procedure 23(e), on March 18, 2014, the Court held a fairness hearing at which counsel for all parties were present. At that hearing, counsel for both parties represented to the Court that notices had been issued and delivered successfully to nearly all of the class members; that neither Class Counsel nor Defense Counsel was aware of any objection to the settlement; and that the named plaintiffs and other class members that Class Counsel had spoken with had no complaints about the settlement. No objectors appeared at the fairness hearing.

## II. <u>LEGAL STANDARDS</u>

In its Preliminary Approval Order, the Court granted both provisional class certification for the purpose of providing notice of the proposed settlement to the putative class members, and preliminary approval for the settlement, pending a fairness hearing in accordance with Rule 23(e). Accordingly, this Opinion addresses both final certification of the class for settlement purposes and approval of the settlement itself.

## A. Class Certification

Classes certified for settlement purposes only are a hallmark of class action litigation.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997) (noting that the settlement-only class has "become a stock device"); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 113 (D.D.C. 2007).  When presented with a settlement-only class, a court must determine whether the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23, with one exception:  the court does not need to consider whether "the case, if tried, would present intractable management problems," as it otherwise would have to determine when ruling on class certification under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620; *see also Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998).

Under Rule 23(a), there are four prerequisites to class certification:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These requirements are generally referred to as "numerosity, commonality, typicality, and adequacy of representation."  *Chilcott*, 522 F. Supp. 2d at 113.  In addition, in order for the class to be certified, it must also satisfy at least one of three sets of criteria set forth in Rule 23(b).  Here, the parties seek to have the Court certify the class under Rule 23(b)(3).  That Rule requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3). "These requirements are referred to as predominance and superiority." *Chilcott*, 522 F. Supp. 2d at 113.

## B. Final Approval of Class Settlement

In addition to the general class certification requirements under sections (a) and (b) of Rule 23, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Moreover, "[i]f the [proposed settlement] would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.* According to the Advisory Committee for the Federal Rules, "[t]he court must make [specific] findings that support the conclusion that the settlement is fair, reasonable, and adequate" and "[t]he findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on applying the standard." Fed. R. Civ. P. 23, Advisory Committee note to section (e)(2) (2003).

In this Circuit, "[t]here is 'no single test' for settlement approval"; however, "courts have considered a variety of factors, including: '(a) whether the settlement is the result of arm's-length negotiations; (b) the terms of the settlement in relation to the strengths of plaintiffs' case; (c) the status of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel.'" *In re LivingSocial Mktg. & Sales Practice Litig.*, 11-cv-0745, 2013 WL 1181489, at *7 (D.D.C. Mar. 22, 2013) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C. 2002)). Moreover, "[a]pproval of the proposed class action settlement lies within the discretion of th[e] Court." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) ("*Vitamins II*"). When deciding whether or not a

proposed settlement meets the requisite standard of "fair, reasonable, and adequate," a court must "eschew any rubber stamp approval," but also must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Id.* (quoting *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)). In addition, "there is a long-standing judicial attitude favoring class action settlements, and the Court's discretion is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases." *Chilcott*, 522 F. Supp. 2d at 114 (internal quotation marks and citations omitted).

## III.   ANALYSIS

The Court will first address whether the proposed class in this case satisfies the requirements for class certification under Rule 23 subsections (a) and (b), before moving on to consider whether the proposed settlement is fair, reasonable, and adequate as Rule 23(e) requires.

### A.  Class Certification – Rule 23(a) Requirements

#### 1.  Numerosity

The "numerosity" requirement of Rule 23(a) states that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement 'imposes no absolute limitations,' but rather 'requires examination of the specific facts of each case.'" *Chilcott*, 522 F. Supp. 2d at 114 (quoting *Gen. Telephone Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Id.*; *see also McKinney v. U.S. Postal Serv.*, 11-cv-631, 2013 WL 164283,

at *5 (D.D.C. Jan. 16, 2013) (numerosity satisfied when class would "likely exceed" 40); *Smith v. Wash. Post Co.*, 962 F. Supp. 2d 79, 91 (D.D.C. Aug. 23, 2013) ("Plaintiff's complaint states a plausible claim for class-wide relief" at approximately 60 class members); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 307 (D.D.C. 2007) (numerosity requirement satisfied for a class with 30 members).

Here, the parties have defined the class narrowly to include only "[a]ll non-exempt employees [of Defendants] who worked more than forty hours in a workweek on the Defendants' 'LK Downing' Project between June 1, 2012, and October 30, 2012." (Settlement Agreement at 3.) Using Defendants' internal records, which included a "comprehensive spreadsheet detailing the weekly hours worked and compensation received by every worker on the [LK Downing] project," cross-checked against the personal records of the named plaintiffs and other informal discovery, the parties have concluded that this definition leads to a class of 47 members. (First Approval Mot. at 2.) Although this is not a large number of class members in the world of class action litigation, it meets the 40-member threshold that cases in this Circuit have used as an informal guideline. Moreover, "judicial economy may be considered by courts in evaluating numerosity," *Meijer*, 246 F.R.D. at 307, and the interest of judicial economy is clearly served in this case by allowing the claims of the putative class members to be settled in one action, rather than having each individual's claim litigated in 47 separate actions. Accordingly, the Court concludes that the class is sufficiently numerous to satisfy the numerosity requirement of Rule 23(a)(1).[3]

---

[3] The fact that none of the 47 class members have chosen to opt out of the class reinforces the conclusion that the class as defined is sufficiently numerous.

2. <u>Commonality</u>

The "commonality" requirement of Rule 23(a)(2) requires that "the plaintiff raise claims which rest on 'questions of law or fact common to the class.'" *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 8 (D.D.C. 2010) (quoting Fed. R. Civ. P. 23(a)(2)). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members," such that "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Chilcott*, 522 F. Supp. 2d at 114 (internal quotation marks and citations omitted).

Here, nearly all of the key questions of law and fact relevant to each putative class member are almost—if not entirely—identical. These include the most basic questions regarding each class member's potential claim, such as: (1) whether the putative class member worked on the LK Downing project; (2) whether the putative class member worked more than 40 hours in any one work week; (3) whether the putative class member was paid as "tools" for their overtime hours at the same rate as their regular hourly rate; and (4) whether the putative class member should have been entitled to 1.5 times their regular pay rate for those overtime hours. (*See* First Approval Mot. at 8.) Indeed, as the parties note, "[t]he only difference between putative class members is the number of relevant overtime hours worked and the wages that are therefore owed." (*Id.*) Because the parties have proposed a narrow class definition that is well-crafted to include only those individuals who were subject to a very specific type of allegedly illegal conduct, the Court concludes that the class satisfies the commonality requirement of Rule 23(a)(2).

11

3. <u>Typicality</u>

The typicality requirement states that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims of the representative be typical of those of the class" and often "overlaps with the commonality inquiry, as each seeks to determine the practicality of proceeding with a class action and the extent to which the plaintiffs will protect the interests of absent class members." *Encinas*, 265 F.R.D. at 9 (internal quotation marks and citation omitted). "However, the overlap between typicality and commonality should not be exaggerated. Each proceeds from a different perspective: the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." William B. Rubinstein, Newberg on Class Actions § 3:31 (5th ed. 2013). Nonetheless, the typicality requirement "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998).

Here, there is no doubt that the named plaintiffs' claims are typical of those of the class as a whole. Indeed, the injuries that the named plaintiffs allegedly suffered were caused by the exact same conduct as the alleged injury to the rest of the class; that is, Keystone's failure to pay the workers on the LK Downing project the overtime to which they were entitled by law. Accordingly, the Court finds that the typicality requirement of Rule 23(a)(3) is satisfied in this case.

4. Adequacy

The final requirement for a class to qualify for certification under Rule 23(a) demands proof that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "is satisfied upon a showing that (1) there is no conflict of interest between the proposed class representative and other members of the class, and (2) the proposed class representative will vigorously prosecute the interests of the class through qualified counsel." *Encinas*, 265 F.R.D. at 9 (citing *Lindsay v. Gov't Employees Ins. Co.*, 251 F.R.D. 51, 55 (D.D.C. 2008)).

The Court has not been presented with any evidence demonstrating that the named plaintiffs have any conflict of interest with the other members of the class. Indeed, pursuant to the Settlement Agreement, the named plaintiffs will be paid according to the exact same formula as everyone else in the class, apart from the $500 awards that each named plaintiff will receive as an incentive payment for pursuing their claims in court. Based on the fact that the named plaintiffs are receiving essentially identical treatment as the rest of the class stemming from essentially identical claims, the Court can think of no reason why they would not adequately protect the interests of the class as a whole. Moreover, Class Counsel avers that he "has litigated dozens of wage and hour cases on behalf of English- and Spanish-speaking workers in state and federal court in both D.C. and Maryland," and that he has previously served as litigation counsel at the D.C. Employment Justice Center and as a trial attorney at the Maryland Legal Aid Bureau. (First Approval Mot. at 9.) Based on these credentials, and on Class Counsel's conduct in court and otherwise throughout these proceedings, the Court concludes that Class Counsel is qualified to prosecute the interests of the

class vigorously. The Court therefore finds that the adequacy requirement of Rule 23(a)(4) is satisfied.

**B. Class Certification – Rule 23(b)(3) Requirements**

As noted above, the parties seek to certify the class pursuant to Rule 23(b)(3). This rule requires the Court to consider whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1. Predominance

The predominance factor of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This inquiry is related to the commonality factor in that "[p]laintiffs must show that the common issues identified by the Court above as sufficient under Rule 23(a)(2) predominate over any non-common issues." *Chilcott*, 522 F. Supp. 2d at 116. Moreover, "the common issues need only be predominant, not dispositive of the litigation." *Id.* In assessing this prong of the Rule 23(b)(3) requirements, "[t]here is no definitive test for determining whether common issues predominate"; nevertheless, "in general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002) ("*Vitamins I*") (internal quotation marks and citation omitted).

In this case, there is no question that common questions predominate over those that are not common to each class member. The violations the Plaintiffs allege stem from Keystone's generalized practice of failing to pay its employees the overtime to which they were entitled; indeed, that central element of Plaintiffs' theory of liability in this case is common to every class member. Moreover, even the minor differences between the class members—such as the amount of total damages—are susceptible to generalized proof since a common formula is used to calculate the individual damages. Accordingly, the Court concludes that the predominance requirement is clearly met in this case.

## 2. Superiority

Rule 23(b)(3) requires the Court to find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The purpose of the superiority requirement is to ensure [ ] that resolution by class action will 'achieve economies of time, effort, and expense'" as well as promote "'uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences.'" *In re LivingSocial*, 2013 WL 1181489, at *6 (quoting *Amchem*, 521 U.S. at 615) (alterations in original). Generally, there are two situations in which a class action is the superior mechanism to other types of litigation. First, and most commonly, class actions are appropriate where many individuals have small claims, and otherwise would not be incentivized to pursue them. *See, e.g.*, *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action

prosecuting his or her rights.").  Second, class actions may be superior in the opposite

circumstance—where the legal system is "is flooded by particular types of claims"

brought individually, such that coordination via class action may be efficient.  2

Newberg on Class Actions § 4:64.

This case fits squarely into the first category.  While the putative class members'

claims relate to damages that are not as tiny as those in many consumer class actions,

they are small enough that most potential class members likely would not consider it

worthwhile to pursue them outside the class action context.  Additionally, at the

fairness hearing, both sides represented to the Court that there are other reasons why the

putative class members would be unlikely to bring their claims to court individually.

These reasons included that many of the class members still work for Defendants; that

in the construction industry there exists a fear of being blacklisted for maintaining a

suit such as this one; and that at least some of the putative class members may have

personal reasons (perhaps related to the own immigration status or that of family

members) for being hesitant to initiate proceedings in federal court.  Based on these

factors, the Court concludes that a class action represents the superior method of fairly

and efficiently adjudicating the instant controversy.

### C.  Final Approval of the Settlement – Rule 23(e) Requirements

Having concluded that the final certification of the settlement class is

appropriate under the standards of Rule 23(a) and (b), the Court now turns to the

settlement itself, and specifically the consideration of whether it is "fair, adequate, and

reasonable" for the purpose of Rule 23(e).  As noted above, while the D.C. Circuit has

not announced a specific test for such consideration, courts in this circuit generally

consider five factors: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strengths of plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. *See, e.g.*, *Chilcott*, 522 F. Supp. 2d at 117; *Vitamins II*, 305 F. Supp. 2d at 104. The Court will consider each of those factors in turn.

### 1. Arm's-Length Negotiations

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Chilcott*, 522 F. Supp. 2d at 120-21 (citing *Vitamins II*, 305 F. Supp. 2d at 104). The parties represent that the proposed settlement was negotiated over four months of back-and-forth between experienced counsel, and informed by "robust informal discovery." (First Approval Mot. at 12.) The parties also note that one of the main benefits of the settlement from the perspective of both sides of this controversy is that it provides quick and fair relief before either side has incurred significant attorneys' fees. (*Id.*)

Based on these representations, the Court concludes that this factor weighs in favor of approval of the settlement. The Court has no evidence that there was any collusion in the negotiations, and the amount and design of the settlement indicate that it was the product of legitimate negotiation on behalf of both sides.

### 2. Terms of the Settlement in Relation to the Strength of the Case

The parties point out several reasons why Plaintiffs might have difficulty establishing liability and damages, and consequently why settlement at this point in the

proceedings is advantageous. First, the parties note that, if the case was to proceed, Defendants would seek to oppose class certification and disaggregate Plaintiffs' claims, which, if successful, might result in the individual plaintiffs losing their incentive to proceed with their cases, for the reasons described above. (First Approval Mot. at 12.) Defendants would also likely argue that the conduct at issue was not willful, and thus that liquidated damages are not appropriate, and thereby limit Plaintiffs' potential recovery to restitution (as opposed to the more generous recovery they receive under the terms of the settlement). (*Id.*) Finally, the parties note that the time it would take to litigate the case fully would make going to trial significantly less attractive to the members of the class, given the relatively small amounts at issue. (*Id.*)

Measuring these potential roadblocks against the actual terms of the settlement, the Court concludes that this factor, too, weighs in favor of approval. The statutes at issue provide for liquidated damages—meaning that class members may have been able to recover twice the amount they were owed if they were able to prove both liability and willfulness on the part of Defendants—but any such recovery would ultimately be somewhat discounted, given the uncertainty of recovering such damages and the time and money that it would have taken to litigate this case to a verdict. When the prospect of litigating this dispute is viewed in this light, settling this matter now for 1.37 times the amount owed to each class member is fair, reasonable, and adequate.

3. Status of the Litigation

In evaluating this factor, courts generally "consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery." *Chilcott*, 522 F.

18

Supp. 2d at 117 (internal quotation marks and citations omitted).  Here, the parties

represent that they have engaged in significant informal discovery, including the

exchange of payroll records and documents, and that this discovery has been  sufficient

to give them a reasonably accurate assessment of the case.  (First Approval Mot. at 12-

13.)  The parties further represent that "further litigation would only benefit counsel—

while having a marginal effect on the outcome."  (*Id.* at 13.)  This Court agrees.  This is

not the type of case where substantial formal discovery is necessary in order for either

side to evaluate adequately the strength of its position.  Class Counsel was provided

with internal company records regarding who worked at the LK Downing project and

the amount of time they spent there.  Class Counsel was further able to cross-check that

information against information obtained independently from the named plaintiffs and

other putative class members.  The Court is satisfied that the parties have engaged in

sufficient discovery such that each side is well-informed of the strength of its case.

Therefore, the Court finds that the settlement "do[es] not come too early to be

suspicious nor too late to be a waste of resources," but rather occurs "at a desirable

point in the litigation for the parties to reach an agreement and to resolve these issues

without further delay, expense, and litigation."  *Vitamins II*, 305 F. Supp. 2d at 105.

   4.  Reaction of the Class

   Class Counsel has filed a sworn statement attesting that no member of the class

has chosen to opt-out.  (Zelikovitz Aff., ECF No. 15.)  Class Counsel has also

represented that both named plaintiffs are extremely pleased with the terms of the

settlement, and that no member of the class has expressed any displeasure with moving

forward to settlement.  (Final Approval Mot. at 4.)  The Court received no objections,

and no objectors appeared at the fairness hearing, despite the fact that the time and location of the hearing was prominently displayed in the notice form.  This factor therefore unambiguously weighs in favor of approval.  *Chilcott*, 522 F. Supp. 2d at 119 (noting that "the existence of even a relatively few objections certainly counsels in favor of approval").

    5.  <u>Opinion of Counsel</u>

Finally, it is well established that the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement."  *Chilcott*, 522 F. Supp. 2d at 121.  Although this Court is mindful that it should not "defer blindly to the views of counsel with regard to the adequacy of a settlement[,]"  *Vitamins II*, 305 F. Supp. 2d at 106, it does put substantial stock in the views of counsel in this case.  Counsel for both parties in this matter are experienced in this type of litigation and, as officers of the court, each has represented that he believes that the settlement is fair, adequate, and reasonable.  Accordingly, this factor also weighs in favor of approval.

**D. Final Approval of the Settlement – Attorney's Fees**

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Any such award "must be made by motion under Rule 54(d)(2)," and "[n]otice of the motion must be served on all parties and, for motion by class counsel, directed to class members in a reasonable manner."  Fed R. Civ. P. 23(h)(1).

Here, the parties have agreed as part of the terms of the Settlement Agreement that Class Counsel shall receive $14,000 in attorney's fees and costs, separate and apart from the damages amounts that are being paid to each member of the class. (Settlement Agreement at 6.)[4] Although the matter of attorney's fees has not been brought to the Court's attention in the form of a motion pursuant to Rule 23(h), the Court will construe the parties' motions for preliminary and final approval of the settlement—which included a description of the agreement with respect to attorney's fees—as motions that additionally request an award of attorney's fees under Rules 23(h) and 54(d)(2). This is primarily because, as the Court reads the rules and the case law interpreting them, the fact that the attorney's fees are structured into the settlement agreement does not excuse the Court from examining whether the attorney's fees agreed upon as a part of the settlement are fair, reasonable, and adequate. Indeed, the Advisory Committee note to Rule 23(h) explicitly points out that "[i]n a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper *whether the fees come from a common fund or are otherwise paid*." Fed. R. Civ. P. 23, Advisory Committee note to section (h) (2003) (emphasis added); *see also Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award."). The reason for such scrutiny is to ensure that the attorney's fees—however awarded—do not evidence "the possibility of a tradeoff between merits relief and attorney's fees," *Evans v. Jeff D.*, 475 U.S. 717, 733 (1986)—in other words, the possibility that class counsel

---

[4] Because the attorney's fee award does not come out of the monetary awards to the class members, it has no direct effect on the recovery for each class member.

might forgo some aspect of relief for class members in return for a defendant's agreeing to pay more attorney's fees. The potential for such situations to arise is self-evident, given that, from a defendant's perspective, only the total liability incurred matters, regardless of how it is divided between class members and their attorneys. Thus, the Court is obligated to evaluate the settlement's provision for attorney's fees.[5]

Turning to the issue of the reasonableness of the attorney's fees provisions, the Court first notes that Plaintiffs brought the class action claims in this case under the District of Columbia Minimum Wage Revision Act, D.C. Code § 31-1001–15, and the District of Columbia Wage Payment and Collection Law, D.C. Code § 32-1301–310. Both of these statutes authorize awarding attorney's fees. *See* D.C. Code §§ 32-1012(c); 32-1308(b). Furthermore, in determining the appropriate amount of attorney's fees, it is well established that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate[,]" *Blum v. Stenson*, 465 U.S. 886, 888 (1984), and "[a]ttorneys without a customary billing rate may establish the prevailing market rate for their services with published surveys of prevailing rates, like the *Laffey* matrix." *Pleitez v. Carney*, 594 F. Supp. 2d 47, 53 (D.D.C. 2009).

Here, the parties' have calculated Class Counsel's compensation using a *Laffey* number of $290/hr, which is consistent with the rate for an attorney of Class Counsel's experience in this jurisdiction. (First Approval Mot. at 4.) At the fairness hearing, Class Counsel represented that he has spent at least 48 hours on this matter thus far,

---

[5] The Court also notes that construing the parties' motions for preliminary and final approval of the settlement is proper because the procedural dictates of Rule 23(h), which requires both a motion and notice of that motion to all parties and to the class, have constructively been met in this case. The attorney's fees provisions were a part of the Settlement Agreement itself, and the terms were also clearly stated in the notice form that was sent out to the class members. (*See* Notice Form at 5.)

which yields a total of $13,920 when multiplied by the applicable hourly rate, and will be devoting additional time and resources into making sure that all class members receive payment if the settlement is finally approved.   Considering that the case has been litigated over the course of almost a full year; that it has required Class Counsel to make multiple court appearances and filings; and that it has also involved investigation, informal discovery, and settlement negotiations, this Court concludes that the attorney's fee figure that has been included in the Settlement Agreement is fair, reasonable, and adequate under the circumstances.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that the proposed class meets the requirements of both Rule 23(a) and Rule 23(b)(3), and the proposed settlement— including the provisions for attorney's fees—is fair, reasonable, and adequate. Accordingly, as stated in the accompanying order, the parties' Joint Motion for Final Approval of the Settlement is **GRANTED**.

Date:  April 11, 2014

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge